# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ANGELICA VILLAFANE VEGUILLA,**

        **Plaintiff,**

**v.**                                       **Case No:  6:18-cv-361-Orl-40DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

Angelica Villafane Veguilla (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for disability benefits.  Doc. 1.  Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings.  Doc. 15 at 13-16, 20-24, 27. The Commissioner argues that the ALJ committed no legal error and that his decision is supported by substantial evidence and should be affirmed.  *Id*. at 16-19, 24-27.  For the reasons discussed below, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

## I.      Procedural History

This case stems from Claimant's applications for disability insurance benefits and supplement security income.  R. 226-40.  Claimant alleged a disability onset date of September 11, 2013.  R. 226, 237.  Claimant's applications were denied on initial review and on reconsideration.  The matter then proceeded before an ALJ.  On May 17, 2017, the ALJ entered a decision denying Claimant's applications for disability benefits.  R. 24-44.  Claimant requested

review of the ALJ's decision, and the Appeals Council denied her request for review.  R. 1-3.  This

appeal followed.

## II.     The ALJ's Decision

The ALJ found that Claimant suffered from the following severe impairments:

degenerative disc disease of the cervical spine; lumbar levorotoscoliosis and L5-S1 bilateral facet

arthropathy; migraine headaches; major depressive disorder; adjustment disorder; posttraumatic

stress disorder; anxiety disorder; and schizoaffective disorder.  R. 26.  In addition, the ALJ found

that Claimant suffered from the following non-severe impairments: thyroid disorder; left toe

fracture; and decreased vision in left eye.  R. 27.[1]  The ALJ, however, determined that none of the

foregoing impairments, individually or in combination, met or medically equaled any listed

impairment.  R. 27-31.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform a full

range of light work as defined in 20 C.F.R. §§ 404.1567 and 416.967[2] with the following specific

limitations:

---

[1] The undersigned notes that the ALJ's discussion of non-severe impairments appears to contain a scrivener's error.  The ALJ stated that he found "the claimant's thyroid disorder, her left toe fracture and her decreased vision in her left eye causes more than a minimal limitation to her ability to perform basic work activities and therefore these conditions are not severe."  R. 27.  The ALJ's statement that the impairments "cause more than . . . minimal limitations" and his conclusion that the impairments are "not severe" are inconsistent.  This inconsistency appears to arise from the failure to state that the impairments "do not" cause more than minimal limitations.  A review of the ALJ's step two findings and his conclusion that the aforementioned impairments are "not severe" establish that the ALJ, indeed, found Claimant's thyroid disorder, left toe fracture, and decreased vision in left eye to be non-severe impairments.

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

> [The claimant] can lift/carry, push and pull 20 pounds occasionally and 10 pounds frequently.  She can stand, walk and sit for 6 hours each in an 8-hour workday.  She can frequently handle, operate hand controls and reach overhead and in all other directions with her left upper extremity.  She can occasionally crouch, kneel, stoop, balance and climb ramps and stairs.  She can never crawl or climb ladders, ropes or scaffolds.  She can occasionally work with vibration.  She can never be exposed to hazards, such as unprotected heights and moving machinery.  She is limited to performing simple, routine and repetitive tasks.  She can make simple work related decisions.

R. 32.  In light of this RFC, the ALJ found that Claimant is able to perform her past relevant work as a housekeeper.  R. 42.  In addition, the ALJ found that Claimant is able to perform other work in the national economy, including office helper, ticket seller, and ticket taker.  R. 43-44.  Thus, the ALJ concluded that Claimant was not disabled between her alleged onset date, September 11, 2013, through the date of the ALJ's decision, May 17, 2017.  R. 44.

## III.    Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the

reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

Claimant raises the following assignments of error: 1) the ALJ failed to consider all the evidence concerning Claimant's vision impairments and failed to account for the limitations caused by those impairments in the RFC determination and hypothetical question to the VE; and 2) the ALJ erred in assigning little weight to Dr. Merrill Reuter's opinion. Doc. 15 at 13-16, 20-24. The undersigned will address each assignment of error in turn.

### A. Vision Impairments

Claimant argues that the ALJ failed to consider all the evidence concerning Claimant's vision impairments and, ultimately, failed to account for the limitations caused by those impairments in the RFC determination and hypothetical question to the VE. Doc. 15 at 14-16.

The Commissioner argues that the ALJ properly consider the evidence concerning Claimant's vision impairments. *Id*. at 19. Further, the Commissioner argues that Claimant has failed to demonstrate that her vision impairments caused any function limitations and, in the event her vision impairments did cause limitations, she failed to demonstrate that those limitations would preclude her from performing her past relevant work as a housekeeper or other work in the national economy. *Id*. at 18-19.

The ALJ is responsible for determining the claimant's RFC at step four of the sequential evaluation process. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In evaluating the claimant's RFC, the ALJ considers the claimant's ability to "meet the physical, mental, sensory, and other requirements of

work[.]" 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).  The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe.  *Id*. at §§ 404.1545(a)(2), 416.945(a)(2).

Claimant has suffered from vision impairments throughout much of her life.  Specifically, the record contains treatment notes predating the relevant period by more than 10 years.  R. 992-1008.  These early notes stem from treatment Claimant received while she lived in Puerto Rico and, thus, are written in Spanish.  *Id*.  There is no English translation of these early treatment notes, but it appears that the notes document the treatment, including surgery, that Claimant underwent to correct her vision impairments.  *See id.*

Treatment notes post-dating the alleged onset date demonstrate that Claimant continued to suffer from vision impairments throughout the relevant period.  Specifically, Claimant was assessed with exophthalmos[3] (R. 469), amblyopia[4] (R. 634), strabismus[5] in the left eye (R. 469, 991, 1056), left eye ptosis[6] (R. 624, 931, 991), and farsightedness in both eyes (R. 991).  It appears that Claimant wore prescription glasses throughout the relevant period to ameliorate the symptoms caused by these impairments.  *See* R. 320, 634, 989.

---

[3] Exophthalmos is the "[p]rotrusion of one or both eyeballs[.]"  *See* Stedman's Medical Dictionary 683 (28th ed. 2006).

[4] Amblyopia is "[p]oor vision caused by abnormal development of visual areas of the brain in response to abnormal visual stimulation during early development."  *See* Stedman's Medical Dictionary 58 (28th ed. 2006).

[5] Strabismus or crossed eyes is "[a] manifest lack of parallelism of the visual axes of the eyes."  *See* Stedman's Medical Dictionary 1841 (28th ed. 2006).

[6] Ptosis is "a sinking down or prolapse of an organ."  *See* Stedman's Medical Dictionary 1600 (28th ed. 2006).

In March 2017, Claimant went to the Florida Eye Clinic.  R. 989-91.  During her visit, Claimant reported that her glasses had broke and her vision was blurry.  R. 989.  Following an eye examination, the treating physician assessed Claimant with strabismus in the left eye,[7] left eye ptosis, and farsightedness in both eyes.  R. 991.  As a result, Claimant was prescribed new prescription glasses.  *Id*.

After the initial denial of Claimant's applications for disability benefits, Claimant filed a request for reconsideration, in which she claimed that she was losing the vision in her left eye.  R. 145.  Despite this serious claim, Claimant did not later allege in her brief to the ALJ that she suffered from severe vision impairments.  R. 402-03.  Further, at the hearing, Claimant did not claim that she was disabled due to her vision impairments.  *See* R. 56-66.

In reaching his decision, the ALJ considered Claimant's vision impairments and found that they were not severe.  R. 27.  At step four of the sequential evaluation process, the ALJ considered evidence related to Claimant's vision impairments, including the treatment notes from the Florida Eye Clinic.  R. 33-40.  The ALJ, however, implicitly found that no vision limitations were warranted, and, thus, the RFC determination contained no such limitations.

Claimant argues that the record contains ample evidence establishing that she suffers from severe vision impairments, and that the ALJ failed to consider some of the evidence concerning those impairments.  Doc. 15 at 15-16.  Further, Claimant argues that her vision impairments cause visual limitations that the ALJ should have, but failed to, include in the RFC determination and hypothetical to the VE.  *Id*. at 14.  These arguments are unpersuasive.

The ALJ mentioned many of the ocular examinations performed during the relevant period, R. 33, 35-40, as well as the treatment notes focused on Claimant's vision, R. 36, 40 (citing R. 634,

---

[7] Claimant was also assessed with accommodative esotropia, R. 991, which is a form of strabismus.

989-91).  The ALJ, however, did not mention the pre-onset vision records.  *See* R. 32-42.  Claimant argues that the failure to mention those records indicates that the ALJ did not consider those records.  Doc. 15 at 15-16.  The undersigned disagrees.  It is axiomatic that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not 'a broad rejection' that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole."  *Escalante v. Comm'r of Soc. Sec.*, Case No. 6:15-cv-796-ORL-JSS, 2016 WL 3947298, at *8 (M.D. Fla. July 22, 2016) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  The ALJ's decision does not evince a broad rejection of the Claimant's vision impairments.  Instead, as discussed above, the ALJ clearly considered evidence concerning Claimant's vision impairments.  R. 33, 35-40.  The mere fact that the ALJ did not expressly discuss the pre-onset vision records does not, in and of itself, mean that the ALJ did not consider that evidence.  Indeed, it appears that the ALJ did consider the pre-onset vision records based on his citation to Exhibit 26F, which contains the pre-onset vision records.  R. 40.  Thus, Claimant has failed to demonstrate that the ALJ did not consider the pre-onset vision records.[8]

---

[8] Claimant also seemingly argues that the ALJ failed to develop a full and fair record by not translating the pre-onset vision records into English.  Doc. 15 at 15-16.  The undersigned is unpersuaded.  The ALJ has a basic duty to develop a full and fair record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  In determining whether it is necessary to remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Graham*, 129 F.3d at 1423 (internal quotation marks omitted).  First, the undersigned questions whether the ALJ had a duty to translate treatment notes that predated the onset date by more than 10 years.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (noting that the ALJ was only required to develop the claimant's complete medical history for the twelve (12) months preceding the month in which the application was filed).  Indeed, Claimant cites no authority concluding that the ALJ's duty to develop the record is so broad.  *See* Doc. 15 at 15-16.  Second, even assuming the ALJ had a duty to translate the pre-onset vision records, Claimant has failed to demonstrate that the record contains any evidentiary gaps due to the failure to translate the pre-onset vision records.  Instead, the record contains plenty of treatment notes from the relevant period addressing Claimant's vision, including two treatment notes focused

The ALJ's consideration of Claimant's vision impairments led him to conclude that those impairments were not severe, and, consequently, the ALJ did not include any visual limitations in the RFC determination or hypothetical to the VE.  R. 27, 32.  Claimant argues that the medical record establishes that she suffers from severe vision impairments, which cause visual limitations that the ALJ should have, but failed to, include in the RFC determination and hypothetical to the VE.  Doc. 15 at 14-15.  In support, Claimant cites to several treatment notes documenting the presence of vision impairments.  *Id.* at 15 (citing R. 469, 624, 634, 868, 931, 970, 989-91, 1052).  It is axiomatic that the presence of an impairment does not reveal the extent to which that impairment limits a claimant's ability to perform work related functions.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Thus, many of the records Claimant relies on do not establish that her vision impairments cause visual limitations.  That said, Claimant does point to evidence that she suffered from reduced vision during the relevant period.  R. 634, 990-91.  Claimant's reduced vision was treated with the use of corrective glasses, *id*, which seem to have improved Claimant's vision.  Indeed, the treatment notes documenting Claimant's reduced vision did not prescribe or recommend any additional treatment beyond corrective glasses, nor was there any indication that Claimant would continue to experience reduced vision with the use of the corrective glasses.  *See* R. 634, 989-91.  Further, the fact that Claimant's brief to the ALJ and Claimant's testimony did not identify her vision impairments as severe impairments causing functional limitations also suggests that Claimant's use of corrective glasses minimized the issues caused by

---

on Claimant's vision.  *See* R. 634, 989-91.  These treatment notes would certainly provide the best evidence concerning the severity and limitations caused by Claimant's vision impairments during the relevant period.  Thus, it is unclear how treatment notes predating the relevant period by more than 10 years would be relevant in this case.  Therefore, the undersigned finds that Claimant has failed to demonstrate that the failure to translate the pre-onset vision records resulted in unfairness or clear prejudice.

her vision impairments.  Moreover, Claimant does not even identify what specific limitations were caused by her vision impairments, *see* Doc. 15 at 14-16, which tends to undermine her argument. Thus, in light of the foregoing, the undersigned finds that the record contains substantial evidence to support the ALJ's determination that Claimant's vision impairments were not severe and, consequently, that Claimant has not demonstrated that the ALJ erred by not including any visual limitations in the RFC.  Therefore, it is recommended that the Court reject Claimant's first assignment of error.

### B.  Dr. Reuter

Claimant argues that the ALJ failed to articulate good cause reasons supported by substantial evidence for assigning little weight to Dr. Reuter's opinion.  Doc. 15 at 21-24.  The Commissioner disagrees.  *Id*. at 24, 26.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process.  *Phillips*, 357 F.3d at 1238.  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis*, 125 F.3d at 1440.  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and

explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179.  There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records.  *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion.  *Winschel*, 631 F.3d at 1179.  The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence.  *Id*.

Claimant's had some history of neck and back pain prior to 2016.  On April 6, 2016, Claimant was involved in an automobile accident.  R. 808.  Shortly after the accident, on May 3, 2016, Claimant began treating with Dr. Reuter, a board certified orthopedic surgeon, for neck and back pain.  R. 808-15.  At Claimant's initial visit, Dr. Reuter observed tenderness and spasms in the cervical and lumbar spine, reduced range of motion in the cervical and lumbar spine, some decreased muscle strength, and some sensory deficits.  R. 809-10.  Claimant treated with Dr. Reuter on two more occasions between May and June 2016.  R. 804-07.  During these visits, Dr. Reuter noted that Claimant continued to suffer from many of the same issues identified during the first

physical examination.  *Id*.  The record contains no additional treatment notes from Dr. Reuter dated after June 14, 2016.

On June 14, 2016, Dr. Reuter completed a physical residual functional capacity questionnaire.  R. 799-803.  In it, Dr. Reuter opined that Claimant can sit for no more than 15 minutes at a time before needing to get up, can stand for no more than 15 minutes at a time before needing to sit or walk, and can only walk one city block before needing to rest.  R. 800.[9]  Dr. Reuter also opined that Claimant can occasionally lift/carry up to 10 pounds and rarely carry more than 10 pounds.  *Id*.  With respect to postural limitations, Dr. Reuter opined that Claimant can rarely twist, stoop, and crouch and never climb ladders or stairs.  R. 802.[10]  Finally, Dr. Reuter opined that Claimant would miss more than four days of work per month due to her impairments and treatment.  *Id*.

The ALJ considered Dr. Reuter's opinion, R. 40-41, and, according to Claimant, stated the following reasons for assigning Dr. Reuter's opinion little weight:

> For the above stated reasons and because there is no evidence to support such extreme limitations, little weight is accorded [to] the opinions of Dr. Reuter.  The claimant's mental and physical treatment since the [alleged onset date], has been conservative only and she has not required inpatient hospitalizations, surgeries or long term physical therapy.  While this doctor alleged the claimant was only able to walk one block without rest, in her function reports, the claimant[ ] herself conceded that she could in fact walk a half of a mile.

---

[9] The questionnaire asked Dr. Reuter to opine on how long Claimant can sit and stand/walk in an eight-hour workday.  R. 801.  Dr. Reuter simply stated "no" in response to the question, *id*, which suggests that Claimant has practically no ability to sit or stand/walk for any appreciable time during an eight-hour workday.

[10] Dr. Reuter opined that Claimant has a limited ability to reach, handle, and finger, but he did not indicate the percentage of time during an eight-hour work day that Claimant would be able to reach, handle, or finger.  R. 802.

Doc. 15 at 21 (citing R. 40-41).  Thus, Claimant contends that the ALJ assigned Dr. Reuter's

opinion little weight because: 1) Claimant's treatment has been conservative and has not required

inpatient hospitalizations, surgeries, or long term physical therapy; and 2) Claimant reported being

able to walk more than one block without rest.  *Id*.  The ALJ's reasoning was not so limited.

The ALJ stated the following when he weighed the medical opinions, including Dr.

Reuter's opinion:

> In coming to a determination in regards to the claimant's disability, great weight is
> afforded the findings and opinions of Dr. Delgado, as his determinations are
> consistent with the record as a whole and are supported by the relevant evidence.
> The record shows that as recently as last year the claimant was working as a
> housekeeper and now she cares for her young children while her husband works.
> She can drive, she shops in stores, she can take care of her own personal care needs
> and she cleans the reflexes house.  She socializes with her family and members of her
> church, she put on a show at her church and, at times she has helped her husband
> with his job.  She can pay bills and manage accounts, she reads the Bible in her free
> time and she has generally been found cooperative and polite.  Little weight is given
> to the opinions of Dr. Weber and Dr. Meyer, as the undersigned finds the
> consultative examination conducted by Dr. Magaly and the claimant's history of
> psychiatric admissions, prior to the [alleged onset date], warrant greater
> restrictions.  Great weight is given to the opinions of Dr. Kline, as this physician
> has program knowledge and his findings are consistent with the record as a whole.
> The claimant's above stated activities are consistent with light work and, at her
> most recent evaluations, she has been found to have a full range of motion in her
> extremities, straight leg raise tests were negative and her gait was normal.  She had
> normal strength and sensation, she had no focal neurological deficits and her
> coordination and reflexes were intact.  For the above stated reasons and because
> there is no evidence to support such extreme limitations, little weight is accorded
> [to] the opinions of Dr. Reuter.  The claimant's mental and physical treatment since
> the [alleged onset date], has been conservative only and she has not required
> inpatient hospitalizations, surgeries or long term physical therapy.  While this
> doctor alleged the claimant was only able to walk one block without rest, in her
> function reports, the claimant[ ] herself conceded that she could in fact a walk half
> of a mile.

R. 41 (emphasis added).  Thus, contrary to Claimant's reading of the ALJ's decision, the ALJ

assigned Dr. Reuter's opinion little weight because: 1) Claimant's daily activities are inconsistent

with Dr. Reuter's opinion; 2) recent physical examinations are inconsistent with Dr. Reuter's

opinion; 3) Claimant's treatment has been conservative and has not required inpatient hospitalizations, surgeries, or long term physical therapy; and 4) Claimant reported being able to walk more than one block without rest.  *Id*.

The ALJ articulated good cause reasons supported by substantial evidence for assigning little weight to Dr. Reuter's opinion.  First, Claimant's daily activities, namely the care she provides her young children when her husband is at work and the chores she performs around her residence, can reasonably be viewed as being inconsistent with Dr. Reuter's more restrictive opinion.  Claimant did not address this reason and, thus, implicitly concedes that this reason supports the ALJ's decision to assign little weight to Dr. Reuter's opinion.

Second, Claimant's recent physical examinations have been largely unremarkable. Claimant began treating with Dr. Reuter approximately one month after the automobile accident. R. 808.  Dr. Reuter's physical examinations revealed tenderness and spasms in the cervical and lumbar spine, reduced range of motion in the cervical and lumbar spine, some decreased muscle strength, and some sensory deficits.  R. 804, 806, 809-10.  As time passed, however, Claimant's physical examinations began to reveal more unremarkable findings, including normal range of motion in Claimant's back (R. 937) and extremities (R. 910, 931, 937, 1090), negative straight leg raises (R. 910, 937), normal gait (R. 937), normal strength and sensation (R. 910, 931, 937), no focal neurological deficits (R. 910, 931, 937), and intact coordination and reflexes (R. 910, 937). While Claimant was also found to have tenderness in her back during some of the more recent examinations (R. 910, 937, 1090), the same examinations can reasonably be viewed as being inconsistent with Dr. Reuter's more restrictive opinion.  Claimant did not address this reason and, thus, implicitly concedes that this reason supports the ALJ's decision to assign little weight to Dr. Reuter's opinion.

Third, as the ALJ noted, the treatments Claimant has received due to her neck and back impairments have generally been conservative in nature, and have not involved inpatient hospitalizations, surgeries, or long term physical therapy.  Claimant argues that this reason fails to account for her difficulty to afford treatment.  Doc. 15 at 22.  Further, Claimant argues that this reason ignores the surgeries performed on her left eye and the hospitalizations caused by her mental impairments.  *Id*. at 23.  These arguments are unpersuasive.  First, Claimant's argument concerning her ability, or lack thereof, to afford treatment assumes that a medical professional either recommended or directed Claimant to undergo a specific treatment, such as surgery, and she either chose not to do so due to an inability to pay or she tried, but was unable, to obtain such treatment due to an inability to pay.  Claimant, however, points to no such evidence.[11]  Thus, the undersigned finds Claimant's first argument unpersuasive.  Claimant's second argument is similarly unpersuasive because she points to surgeries and hospitalizations unrelated to Dr. Reuter's opinion.  Dr. Reuter focused on Claimant's neck and back impairments, and, as the ALJ noted, there is no evidence that Claimant has had any inpatient hospitalizations, surgeries, or long term physical therapy due to her neck and back impairments.  Having found Claimant' arguments unpersuasive, the undersigned finds that the conservative treatment of Claimant's neck and back impairments can reasonably be viewed as being inconsistent with Dr. Reuter's restrictive opinion.

Finally, Claimant's report that she can walk a half-mile before needing to rest (R. 284) is inconsistent with Dr. Reuter's opinion that Claimant could only walk one city block before needing to rest (R. 800).  Claimant argues that her report is not necessarily inconsistent with Dr. Reuter's

---

[11] Claimant notes that Dr. Reuter discussed the possibility of performing surgery on Claimant's back.  Doc. 15 at 23.  Indeed, Dr. Reuter discussed the possibility of performing surgery on Claimant's back, but only if more conservative treatment was insufficient.  R. 806.  There is nothing in Dr. Reuter's treatment notes that suggest he believed surgery was necessary or recommended that Claimant undergo the surgery.  *See* R. 804-807.

opinion because "plenty of city blocks are a half-mile long[.]"  Doc. 15 at 23.  This argument is unpersuasive since Claimant has cited no evidence demonstrating that there are "plenty" of half-mile long city blocks or that Dr. Reuter understood the questionnaire's reference to a city block as equating to a half-mile.  Thus, Claimant's report that she can walk a half-mile before needing to rest can reasonably be viewed as being inconsistent with Dr. Reuter's opinion concerning Claimant's ability to walk.

In summary, the undersigned finds that the ALJ articulated good cause reasons, each of which are supported by substantial evidence, in support of his determination to assign Dr. Reuter's opinion little weight.  Therefore, it is recommended that the Court reject Claimant's second assignment of error.

## V.   Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the Court:

1.  **AFFIRM** the Commissioner's final decision; and

2.  Direct the Clerk to enter judgment in favor of the Commissioner and against the Claimant, and close the case.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 29, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy